**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Osterhaus Pharmacy Incorporated, *et al.*, | No. CV-24-01539-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| CVS Health Corporation, *et al.*, | |
| Defendants. | |

At issue are the residual portions of two related motions to compel arbitration filed by Defendants against the four named plaintiffs in this class action (Doc. 42; Doc. 68). Defendants' motions are predicated upon an arbitration agreement[1] that assigns to an arbitrator both (1) adjudicative authority over the claims contained in Plaintiffs' pleading and (2) adjudicative authority over questions relating to the enforceability of the arbitration agreement itself. In response to Defendants' motions, Plaintiffs have argued that both aspects of the arbitration agreement (*i.e.*, the provision concerning the arbitrability of Plaintiffs' substantive claims and the provision concerning the arbitrability of the agreement itself) are unconscionable and therefore unenforceable. In a prior Order (Doc. 76), the Court held that the self-referential clause of the arbitration agreement delegating to an arbitrator issues concerning the agreement's own arbitrability is indeed unenforceable. As a result of that holding, it became the duty of this Court, and not an

---

[1] Although there exist separate arbitration agreements between Defendants and each respective plaintiff, the agreements are materially similar because, as discussed in more detail below, they all derive from Defendants' Provider Manuals. For ease of reference, the Court will refer to the parties' arbitration agreement in the singular.

1    arbitrator, to determine whether the arbitration agreement is also unenforceable as applied

2    to Plaintiffs' substantive claims. However, the Court declined to dispose of that matter in

3    the aforementioned prior Order and instead requested supplemental briefing on the issue,

4    which both sides have now provided (Doc. 82, Defendants' Supp. Br.; Doc. 83, Plaintiffs'

5    Supp. Br.). Defendants have also filed a Motion to Strike parts of Plaintiffs' supplemental

6    brief (Doc. 86), to which Plaintiffs filed a response (Doc. 87) and Defendants filed a reply

7    (Doc. 90). The Court finds these matters appropriate for resolution without oral argument.

8    *See* LRCiv 7.2(f).

9    **I.    Background and Legal Standard**

10           The Court summarized the facts of this case in its prior Order, (*see* Doc. 76 at 1–4),

11    and there is no need to recapitulate that background here. Plaintiffs bring seven claims in

12    their First Amended Complaint (Doc. 65), and Defendants assert that all seven claims are

13    subject to mandatory arbitration pursuant to the terms of the parties' arbitration agreement.

14           Because the arbitration agreement at issue here concerns interstate commerce, it is

15    governed by the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 2. When presented with a

16    dispute implicating the FAA, a court must compel arbitration if the court determines that a

17    valid agreement to arbitrate exists and that the agreement encompasses the dispute at issue.

18    *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). District

19    courts apply state law principles governing the formation of contracts to determine whether

20    a valid arbitration agreement exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938,

21    944 (1995). Under the FAA, "agreements to arbitrate [may] be invalidated by generally

22    applicable contract defenses, such as fraud, duress, or unconscionability, but not by

23    defenses that apply only to arbitration or that derive their meaning from the fact that an

24    agreement to arbitrate is at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir.

25    2021) (citation and internal quotations marks omitted).

26           The standard governing summary judgment controls the resolution of a motion to

27    compel arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

28    "The summary judgment standard is appropriate because the district court's order

compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* (citation and internal quotations marks omitted).

Plaintiffs do not contest that they entered into an arbitration agreement with Defendants. Nor do Plaintiffs contest that this lawsuit falls within the ambit of that agreement. Instead, Plaintiffs argue that the arbitration agreement is unenforceable by virtue of its unconscionability under Arizona law.

## II.    The Court's Prior Order and Defendants' Motion to Strike

As noted above, the Court issued a prior Order that (1) disposed of the parties' dispute regarding the enforceability of the delegation clause but (2) requested supplemental briefing regarding the enforceability of the arbitration agreement as a whole. (*See* Doc. 76.) To reiterate, and to provide terminological clarity, an "arbitration agreement" is a contractual provision assigning to an arbitrator adjudicative authority over a substantive claim, whereas a "delegation clause" is a sub-provision of an arbitration agreement assigning to an arbitrator adjudicative authority over threshold disputes concerning the arbitrability of the agreement itself. In their briefing leading up to the Court's prior Order, Plaintiffs presented the Court with a raft of arguments purportedly showing that both the arbitration agreement and the delegation clause were both procedurally and substantively unconscionable.[2] The Court categorically rejected Plaintiffs' reasoning regarding procedural unconscionability but accepted as facially persuasive some of Plaintiffs' reasoning concerning substantive unconscionability. However, although the Court found the parties' briefing to be sufficient upon which to hold the delegation clause substantively unconscionable, the Court requested supplemental briefing as to the arbitration agreement's alleged unconscionability.[3] In so requesting, the Court expressly limited the

___

[2] In Arizona, substantive unconscionability and procedural unconscionability are separate defenses to enforcement of the terms of an arbitration agreement, and either one standing alone is sufficient to render the contested terms void. *Rizzio v. Surpass Senior Living LLC*, 251 Ariz. 413, 417 ¶ 9 (2021).

[3] The Court adopted this dichotomous approach based upon the Supreme Court's instruction that district courts are to apply different standards in analyzing the validity of arbitration agreements generally and delegation clauses in particular. *See First Options*, 514 U.S. at 944–45.

scope of supplemental briefing to substantive unconscionability. The Court's Order was not an invitation to restart the litigation process, make new arguments, or repeat arguments that the Court had already rejected. Despite the express ambit of the Court's Order, Plaintiffs have once again presented several arguments relating to procedural unconscionability. (*See* Plaintiffs' Supp. Br. at 2–5.)

Defendants have moved the Court to strike the portion of Plaintiffs' supplemental brief that addresses procedural unconscionability or in the alternative to provide Defendants an opportunity to submit their own argumentation on the subject. (*See* Doc. 86.) Plaintiffs' response to Defendants' Motion to Strike is utterly devoid of merit and consists of little more than a patently absurd denial of non-compliance. (*See* Doc. 87.) The Court's prior Order states that "[t]he parties shall confine their analysis to substantive unconscionability," and yet Plaintiffs' supplemental brief opens with a four-page section entitled "Caremark's arbitration clause is procedurally unconscionable." (*See* Plaintiffs' Supp. Br. at 2–5.) Given this clear deviation from the Court's request, Plaintiffs' refusal to recognize their error is simply bizarre. The Court expects attorneys who appear before it to at least attempt to preserve their credibility by acknowledging mistakes when such are made.

The Court could therefore grant Defendants' Motion to Strike, as the objected-to portion of Plaintiffs' briefing constitutes a "part of a filing" that is expressly "not authorized" by a "court order." *See* LRCiv 7.2(m). Nevertheless, the Court will not do so, as motions to strike are disfavored and rarely granted, even where, as here, the motion is technically sufficient. *See Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, No. CV-17-04140-PHX-DWL, 2019 WL 4736775, *2 (D. Ariz. Sept. 27, 2019). One reason that motions to strike are frowned upon by courts is that they "often needlessly run up the cost of litigation and squander judicial resources," *see id.*, as evidenced by the parties' respective requests in the instant case that they both be permitted to file additional briefs. Motions to strike are particularly disfavored where the challenged impropriety is a legal argument that a court can simply ignore. *Id.*; *see also G&G Closed Cir. Events LLC v.*

*Barajas*, No. CV-19-05145-PHX-DLR, 2020 WL 1659903, at *2 (D. Ariz. Apr. 3, 2020) (noting that motions to strike are what give motion practice a bad name). There is also no need to strike the section of Plaintiffs' supplemental brief addressing procedural unconscionability because, in addition to being impermissible, it is legally unavailing.

Plaintiffs assert that the arbitration agreement at issue here is procedurally unconscionable because (1) Defendants procured the agreement through their coercive economic power, (2) Plaintiffs possessed less business experience than Defendants, (3) Defendants drafted the agreement and did not explain its terms to Plaintiffs, and (4) Plaintiffs lacked the requisite economic leverage to object to the terms of the agreement. (Plaintiffs' Supp. Br. at 2–5.) Plaintiffs' argument is marred by internal inconsistency. It makes little sense for Plaintiffs to contend that they were simultaneously "unaware of . . . the arbitration clause" but also that they had "no choice" but to accept the clause as written. If Plaintiffs were indeed ignorant of the terms of the arbitration agreement, then it is tautological that Plaintiffs lacked the ability to object to those terms. If, on the other hand, Defendants utilized their overwhelming market power to "coerce" Plaintiffs into acceding to an arbitration agreement that Plaintiffs in fact wished to reject, then Plaintiffs can hardly claim that they were "surprised by [the] arbitration clause and its terms." But even putting aside Plaintiffs' attempt to have their cake and eat it too, their argument fails.

The only case that Plaintiffs cite in support of their argument regarding procedural unconscionability is *Duenas v. Life Care Centers of Am., Inc.*, 236 Ariz. 130 (Ct. App. 2014). In that case, the Arizona Court of Appeals held as follows:

> Procedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should. Under the procedural rubric come those factors bearing upon the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. Other factors include whether the contract was separate from other

paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances.

. . . .

Though the factors listed above are helpful in the analysis, they are not exclusive, and the fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts.

*Id.* at 135 ¶¶ 8–9 (internal citations and quotation marks omitted). Although the *Duenas* court deemed issues such as relative bargaining power to be germane to the analysis of procedural unconscionability, it is clear that the court's primary concern was whether the less sophisticated party understood what it was agreeing to. To be sure, unequal negotiating power may be an indicium of an absence of mutual understanding, but the Court does not read *Duenas* to stand for the proposition that a gross disparity in economic leverage can by itself establish procedural unconscionability under Arizona law. Were that the holding from *Duenas*, then every contract between a large corporation and the proverbial little guy would be unenforceable, even where such contracts' terms are in no way objectionable. That cannot be the state of the law in Arizona. Therefore, Defendants' market power is irrelevant to the Court's unconscionability inquiry unless Plaintiffs are able to establish that Defendants abused that market power in some way.

Here, Plaintiffs fail to establish that Defendants procedurally abused their market power. The Court is unpersuaded by Plaintiffs' contention that Defendants kept them in the dark about the terms of the arbitration agreement. First, as already noted, Plaintiffs' assertion of ignorance is inconsistent with their assertion of coercion. Second, Plaintiffs' declaration of unawareness is devoid of factual substantiation. Although Plaintiffs state that they were presented with a new Provider Manual every two years on a take-it-or-leave-it basis, (*see* Doc. 83-2 Exs. 9–11), that contention alone does not demonstrate that Plaintiffs were prevented from understanding the terms of the arbitration agreement. Although Plaintiffs' averments establish that the Provider Manuals were contracts of adhesion, arbitration agreements located within adhesive contracts are not

intrinsically procedurally unconscionable under Arizona law. *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 151 (1992). Instead, such agreements are fully enforceable unless they are substantively unconscionable or otherwise violate the reasonable expectations of the parties. *Id.* Thus, even if Defendants possessed immense market power and issued a contract of adhesion containing an arbitration agreement, that arbitration agreement is enforceable under Arizona law unless it is substantively defective.

Plaintiffs' argument also appears to be directed at California law rather than Arizona law. As the Ninth Circuit has noted many times, the California unconscionability defense requires the presence of both procedural and substantive unconscionability in inverse proportions according to a sliding scale. *See, e.g.*, *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). Under California law, procedural unconscionability can be established by the bare showing that a contract is adhesive. *Id.* Such a showing does not necessarily invalidate the contract, but it does satisfy the procedural prong of the two-prong unconscionability test. *Id.* The law is different in Arizona. Here, "[c]laims of substantive or procedural unconscionability are *independent* defenses to enforceability." *Gullett on behalf of Est. of Gullett v. Kindred Nursing Centers W., L.L.C.*, 241 Ariz. 532, 535 ¶ 6 (Ct. App. 2017) (emphasis added). Therefore, there is no need to present an argument grounded in procedural unconscionability when the success of that argument depends upon a showing of substantive unconscionability. As the Court explained once before, such an argument would be an exercise in redundancy.

Thus, because Plaintiffs' briefing on the subject of procedural unconscionability is both improper and unavailing, the Court will not consider it further. For the reasons given above, the Court will nevertheless deny Defendants' Motion to Strike, and the Court reiterates here the disfavored status of such motions. Having summarized the background of this case, and having disposed of preliminary legal matters, the Court turns to the issue on which it sought supplemental briefing, namely whether the parties' arbitration agreement is substantively unconscionable.

. . .

## II.    Discussion

Plaintiffs argue that the following provisions render the arbitration agreement substantively unconscionable and therefore unenforceable: (1) the fee-shifting provision, (2) the unilateral modification provision, (3) the uneven remedies provision, (4) the escrow provision, (5) the confidentiality provision, and (6) the limitations provision.[4] Plaintiffs also argue that the unconscionable provisions are not amenable to severance and therefore doom the entire agreement. The Court examines each argument in turn.

### A.    The Fee-Shifting Provision

The arbitration agreement at issue here comprises one section of the Provider Manual, which is a contract between the parties. Defendants issue new Provider Manuals every even-numbered year, as well as targeted amendments thereto on an intermittent basis, including one such amendment in 2023. The versions of the arbitration agreement that are relevant to this case are the versions from 2016, 2018, 2020, 2022, 2023, and 2024 (Doc. 43-4; Doc. 43-5; Doc. 43-6; Doc. 69-1; Doc. 69-2; Doc. 69-3). In all such versions, the arbitration agreement contained a fee-shifting provision providing that "[t]he expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the [final] award of the arbitrator(s) is rendered, except as otherwise required by Law." (*See, e.g.*, Doc. 43-4 at 44; Doc. 69-3 at 96.) Plaintiffs argue that the arbitration agreement's fee-shifting provision is substantively unconscionable because it imposes a financial burden upon Plaintiffs that they would not bear in court. (Plaintiffs' Supp. Br. at 6–7.) Plaintiffs contend, and Defendants concede, that the fee-shifting provision creates the possibility that Plaintiffs might be forced to pay for Defendants' fees regarding Plaintiffs' antitrust claim, whereas the antitrust statute only contemplates an award of fees to a prevailing plaintiff, not a prevailing defendant. (*See* Defendants' Supp. Br. at 6 (citing 15 U.S.C. §§ 15(a), 4304).) Despite the uncontested fact that the fee-shifting provision

---

[4] Plaintiffs appear to have abandoned an argument that the arbitration agreement's discovery restrictions are unconscionable. The Court therefore does not address that argument.

creates a risk of financial burden that is absent from the antitrust statute, Plaintiffs' argument ultimately fails.

Plaintiffs are incorrect when they state that "[t]he loser pays provision is a marked departure from the underlying law that would normally apply to this case." (*See* Doc. 70 at 11.) Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Ariz. Rev. Stat. § 12-341.01(A). The term "arising out of a contract" is construed broadly and encompasses any claim that "could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15 ¶ 27 (Ct. App. 2000). In applying Arizona's fee-shifting statute, "the court should look to the fundamental nature of the action rather than the mere form of the pleadings." *Id.* Under this standard, a claim can be deemed to have arisen out of a contract even when the claim is pled as, *inter alia*, unjust enrichment, quantum meruit, or declaratory action. *ML Servicing Co. v. Coles*, 235 Ariz. 562, 570 ¶¶ 31–33 (Ct. App. 2014) (unjust enrichment); *Pelletier v. Johnson*, 188 Ariz. 478, 482–83 (Ct. App. 1996) (quantum meruit); *Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 394 (Ct. App. 1977) (declaratory action). Five of Plaintiffs' seven claims thus fall within the ambit of Arizona's fee-shifting statute, namely the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment of unconscionability, unjust enrichment, and quantum meruit. Because Arizona's fee-shifting statute does not apply to purely statutory causes of action in which a contract occupies only a peripheral role, it is unlikely that Plaintiffs' two remaining claims for Medicare and antitrust violations fall within the scope of § 12-341.01. *See Keystone Floor & More, LLC v. Ariz. Registrar of Contractors*, 223 Ariz. 27, 30 ¶ 11 (Ct. App. 2009). Nevertheless, given that a majority of Plaintiffs' claims are eligible for fee-shifting, it is difficult to see how the arbitration agreement's fee-shifting provision works an unconscionable result.

To be sure, judicial application of Arizona's fee-shifting statute is discretionary, whereas the arbitration agreement's fee-shifting provision is mandatory. However, the

discretionary nature of § 12-341.01 does not fundamentally change the unconscionability calculus. Plaintiff cites numerous cases for the proposition that "substantive unconscionability exists when a fee-shifting clause creates for employees a 'greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021) (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010)). Sound as that proposition is in the abstract, it does not appear to be the law in Arizona. None of the cases cited by Plaintiff in support of its fee-shifting argument apply Arizona law, and the majority of those cases apply California law.[5] (*See* Doc. 70 at 11–12.) Therefore, unlike in California, an arbitration agreement is not *ipso facto* unconscionable simply because it exposes a litigant to a risk of fee-shifting greater than that which would exist in federal court. If the risk of fee-shifting is to invalidate a contract on unconscionability grounds in Arizona, it will not be because of a bright-line violation such as that described in the cases cited by Plaintiffs, but instead because the risk of fee-shifting is shown to pose a generalized financial burden that prevents a party from "effectively vindicate[ing] [its] rights in the arbitral forum due to the prohibitive costs of arbitration." *Rizzio*, 251 Ariz. at 417 ¶ 10. Such costs "cannot be speculative." *Id.* ¶ 11. Here, in the event that Plaintiffs lose, they face increased fee-shifting only if the Court in its discretion declines to issue an award of fees. It would be sheer speculation to attempt to divine which claims Plaintiffs are likely to prevail upon and whether the Court would exercise its discretion to issue an award of fees. *See Holmes v. CVS Health*, No. CV-19-04936-PHX-SMB, 2020 WL 4365881, at *4 (D. Ariz. July 30, 2020) ("Plaintiff's mere speculation that she will lose in arbitration and the arbitrator will award costs to CVS does not make her Arbitration

_____

[5] As might already be clear to the reader, it is unfortunately a common refrain that litigants attempting to invalidate arbitration agreements in Arizona predicate their arguments on inapplicable California law. *See Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1133 (D. Ariz. 2009) ("Plaintiff argues that the potential that he might have to pay for arbitration costs if he does not prevail renders the arbitration agreement substantively unconscionable. Plaintiff again cites to a case decided under California law, which does not apply here." (internal citations omitted)).

Agreement unconscionable."). Thus, the Court cannot say at this juncture that the arbitration agreement's fee-shifting provision is unconscionable.

### B. The Unilateral Modification Provision

All relevant versions of the arbitration agreement provide that:

> From time to time . . . Caremark may amend the [arbitration agreement] . . . by giving notice . . . to Provider of the terms of the amendment and specifying the date the amendment becomes effective. If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment is accepted by Provider and is considered part of the Provider Agreement.

(*See, e.g.*, Doc. 43-4 at 44; Doc. 69-3 at 95.) In its prior Order, the Court declined to consider the alleged unconscionability of the unilateral modification provision because Plaintiffs had failed to adduce material instances in which Defendants had unconscionably exercised the provision. In their supplemental brief, Plaintiffs point to alleged instances of unconscionable unilateral modification. (Plaintiffs' Supp. Br. at 7–10.) Nevertheless, the Court still need not decide under what circumstances a unilateral modification provision can give rise to substantive unconscionability because the provision at issue in the instant case is not a "unilateral modification provision" in the true sense of that term.

The provision here differs markedly from those that have been held to be unconscionable in the cases cited by Plaintiff. For instance, in *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682 (9th Cir. 2024), upon which Plaintiffs rely heavily, the terms of the arbitration agreement "state[d] they may be changed without notice and changes apply retroactively." In *Heckman*, the defendant's "website provide[d] that a person merely browsing the website without purchasing a ticket agrees to Ticketmaster's changed Terms." *Id.* "Ticketmaster's Terms also permit unilateral modification of the Terms without prior notice. The Terms provide that Ticketmaster retains the power to 'make changes to the Terms at any time' which would 'be effective immediately when we post a revised version of the Terms on the Site.'" *Id.* Furthermore, in *Heckman* "[t]he changed Terms apply not only prospectively but also retroactively. That is, they apply to 'any

dispute, claim or controversy . . . irrespective of when that dispute, claim, or controversy arose.'" *Id.* (citation omitted). The Ninth Circuit held the unilateral modification provision in *Heckman* to be unconscionable in the extreme. *Id.* at 683. Similarly, in a case from this District upon which Plaintiffs rely, "[t]he Agreement provide[d] that Vemma 'may modify or amend its policies and procedures and marketing program at any time.'" *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DGC, 2018 WL 637382, at *4 (D. Ariz. Jan. 31, 2018).[6] The Court in *Edwards* held the unilateral modification provision to be unconscionable because it effected the cardinal injustice of "requiring Plaintiff to arbitrate a dispute he did not originally agree to arbitrate." *Id.* at *5.

The so-called "unilateral modification provision" in the instant case bears almost no resemblance to the provisions in *Heckman* and *Edwards*. Indeed, it is not a modification provision at all. Instead, it is a method by which Defendants can offer a new contract. Under the provision's plain terms, Defendants must give notice of any amendment and must provide additional notice of the amendment's effective date. Such notice essentially constitutes an offer. Plaintiffs then have the choice of either accepting the offer, which they may do by submitting claims after the effective date of the amendment, or declining the offer. The terms of the arbitration agreement do not indicate, and Plaintiffs do not argue, that an amendment adopted pursuant to this clause can operate retroactively. This process is a far cry from the faux processes described in *Heckman* and *Edwards*. Of course, any amendment offered by Defendants according to the terms of this provision is necessarily an amendment of adhesion, but as discussed *supra*, adhesion without more is not unconscionable under Arizona law. Therefore, the unilateral modification provision is not *per se* unconscionable. That is not to say that a particular amendment adopted thereby could not itself be substantively unconscionable. But any such unconscionability would need to

---

[6] "Moreover, under the terms of the Agreement, Vemma need not notify its Affiliates of modifications to the policies and procedures." *Edwards*, 2018 WL 637382, at *4. "Vemma instead impose[d] on Affiliates 'a duty to keep current on policy and marketing changes by reviewing the current policies and procedures located on www.govemma.com on a regular basis to ensure . . . familiarity.'" *Id.*

1    exist independently of the unilateral modification provision from which the amendment

2    sprang.

3         **C.    The Uneven Remedies Provision**

4         Plaintiffs argue in their supplemental brief that the arbitration agreement's "uneven

5    remedies provision" is substantively unconscionable. (Plaintiffs' Supp. Br. at 10.) In their

6    prior briefing, Plaintiffs pointed to two distinct remedies provisions and argued that both

7    are unconscionable. The first clause, which is present in all versions of the arbitration

8    agreement and which Plaintiffs denominate as the agreement's "asymmetric remedies

9    provision," states that "[i]n no event may the arbitrator(s) award indirect, consequential, or

10   special damages of any nature (even if informed of their possibility), lost profits or savings,

11   punitive damages, injury to reputation, or loss of customers or business, except as required

12   by Law." (*See, e.g.*, Doc. 43-4 at 44; Doc. 69-3 at 95.) Plaintiffs fail to explain in what way

13   this contractual limitation of damages is unconscionable. First, contrary to Plaintiffs'

14   assertion, this provision is plainly not asymmetric. Second, the Arizona judiciary has

15   repeatedly upheld the validity of contractual provisions limiting and/or eliminating

16   categories of damages, particularly in the commercial context. *See Angus Med. Co. v.*

17   *Digital Equip. Corp.*, 173 Ariz. 159, 167 (Ct. App. 1992) (noting that "it is not

18   unconscionable to waive or disclaim an entire category of remedies"); *1800 Ocotillo, LLC*

19   *v. WLB Grp., Inc.*, 219 Ariz. 200, 204 ¶ 17 (2008) ("We also decline to hold that liability-

20   limitation clauses are generally unenforceable as contrary to a judicially identified public

21   policy."); *Roscoe-Gill v. Newman*, 188 Ariz. 483, 485 (Ct. App. 1996) (holding that

22   liquidated-damages provisions cannot be deemed unenforceable for being too low). This

23   provision is therefore not unconscionable under Arizona law.

24        The second remedies provision that Plaintiffs attack appears only in the arbitration

25   agreements from 2020 onward and provides in material part that:

26        Accordingly, if Provider, its agents, counsel, or arbitrator fail to abide by the
          terms and conditions set forth in this **Arbitration** section of the Provider
27        Manual, Caremark shall be entitled to (a) specific performance, including
          immediate issuance of a temporary restraining order or preliminary
28

1
2
3
4
5

injunction enforcing the Agreement, and to judgment for damages (including reasonable attorneys' fees and costs) caused by the breach; (b) an option to void the dispute resolution or arbitration award; and (c) all other legal and equitable remedies available to Caremark, including termination of the Provider Agreement or Provider's participation in any Caremark network or Plan Sponsor network.

6
7
8
9
10
11

(Doc. 69-3 at 97 (emphasis in original); *see also* Doc. 43-6 at 91 (2020 agreement).) Plaintiffs refer to this clause as the "unilateral remedy for breach provision." Although located within the arbitration agreement's section addressing confidentiality, the provision expressly applies to any "fail[ure] to abide" by the terms of the entire arbitration agreement. Therefore, operation of the provision is not limited to confidentiality breaches, but instead extends to breaches generally. This clause is patently unconscionable.

12
13
14
15
16
17
18
19
20
21
22
23

"A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties." *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 512 ¶ 8 (Ct. App. 2013). By its plain terms, the unilateral remedy for breach provision is one-sided. Only Defendants may avail themselves of the clause's benefits. That one-sidedness alone would doom the provision, as there is no justifiable reason why Defendants should be entitled to a wide range of extraordinary remedies in the event that Plaintiffs breach the agreement but that Plaintiffs should lack access to equivalent relief. Compounding the unconscionability of this clause is the fact that Defendants are permitted to trigger their one-sided remedy against Plaintiffs even when it is the neutral arbitrator who fails to abide by the terms of the arbitration agreement. Defendants do not meaningfully attempt to defend this inequitable term. The unilateral remedy for breach provision is substantively unconscionable.

24

### D.    The Escrow Provision

25
26
27
28

In 2020, Defendants added a provision to the arbitration agreement that requires any party seeking to commence arbitration to "place in escrow for the benefit of the opposing party an amount to be determined by the arbitrator(s) as sufficient to cover the estimated attorney's fees and other expenses of arbitration that will be incurred in defense of the

arbitration action, which shall in no event be less than $50,000." (Doc. 43-6 at 92.) In 2022, Defendants added a further requirement that the initiating party must also place into escrow a sum of money equal to the "forecasted amount of potential claims that could be submitted by Provider based on Provider's historical Caremark adjudicated paid claims experience (e.g., previous rolling twelve months)."

The Arizona Supreme Court has adopted a "framework for evaluating whether the financial costs of arbitration prohibit a plaintiff from vindicating her rights." *Rizzio*, 251 Ariz. at 417 ¶ 11.

> Under that framework, a party seeking to invalidate an arbitration agreement must establish arbitration costs with reasonable certainty; costs cannot be speculative. Next, the party must make a specific, individualized showing that she would be financially unable to bear the costs of arbitration. Lastly, the court considers whether the agreement permits a party to waive or reduce arbitration costs because of financial hardship. Ultimately, the determination of substantive unconscionability is a question of fact that depends on the unique circumstances of each case. Absent a showing that arbitration costs would deny the plaintiff meaningful access to a forum in which she could vindicate her rights, a court will not find an arbitration agreement substantively unconscionable.

*Id.* ¶ 11 (internal quotation marks and citations omitted). Here, Plaintiffs satisfy all three prongs of the *Rizzio* test.

The escrow provision requires Plaintiffs to produce a sum of money equal to the projected cost of Defendants' attorneys' fees and the projected cost of the "other expenses of arbitration that will be incurred in defense of the arbitration action." That latter phrase presumably includes, *inter alia*, the full cost of the arbitrators' fees. These costs alone are unduly oppressive, not to mention the requirement that the two plaintiffs who still operate pharmacies must place into escrow an additional amount of money equal to the forecasted amount of potential claims that could be submitted going forward. There is of course no way of knowing precisely how expensive the arbitrators and Defendants' counsel will be, but Plaintiff has adduced competent evidence demonstrating that the combined cost of those two figures would be in the high hundreds of thousands of dollars. (Plaintiffs' Supp.

Br. at 12.) This case involves a complex set of facts governed by a dense contract overlaid by complicated antitrust laws and Medicare regulations. A case of this nature will be difficult and time-consuming to litigate, and that laboriousness will manifest in costly attorneys' and arbitrators' fees. These costs are not speculative.

Defendants contend that the costs imposed by the escrow provision are not onerous when considered in comparison with the damages sought in Plaintiffs' operative pleading. (Defendants' Supp. Br. at 4–5.) In support of that argument, Defendants cite *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 253 ¶¶45–46 (Ct. App. 2005), in which the Arizona Court of Appeals held that arbitration filing fees of $11,750 were not unconscionable in light of the fact that the plaintiffs therein sought to recover between $500,000 and $1,000,000. Defendants argue that *Harrington* precludes a finding of unconscionability in the instant case because the $50,000 escrow minimum pales in comparison to the "billions of dollars" that Plaintiffs seek to recover in this lawsuit. The Court disagrees. First, it is improper for Defendants to use $50,000 as the projected escrow number. That value is the minimum amount that must be placed into escrow, but it cannot seriously be contended that the combined arbitrators' and attorneys' fees in a case of this complexity will fall below that minimum value. Plaintiffs have presented evidence that the arbitrators' fees alone will exceed $300,000, to which Defendants' estimated attorneys' fees would then need to be added. (*See* Plaintiffs' Supp. Br. at 12.) Second, it is unclear upon what basis Defendants' assert that "billions of dollars" are reasonably at stake in this lawsuit. Defendants do not substantiate that number, and the Court therefore deems it to be speculation. Third, and most importantly, the Court does not read *Harrington* to create a bright-line rule conditioning a finding of cost-based unconscionability upon any particular ratio of cost to relief sought. The court in *Harrington* utilized such a ratio as a means of demonstrating the reasonableness of the arbitration costs in that case, but the court did not present that heuristic as a holding of general applicability. As the Arizona Supreme Court has since clarified, the question of cost-based unconscionability turns upon whether a plaintiff succeeds in "showing that arbitration costs would deny the plaintiff meaningful

access to a forum in which [it] could vindicate [its] rights," not some arbitrary cost-to-relief ratio as Defendants suggest. *See Rizzio*, 251 Ariz. at 417 ¶ 11.

Defendants next argue that the escrow costs are not harsh because litigation in federal court is already expensive. The Court fails to perceive the thrust of this contention. Litigation of complex claims in federal court is unquestionably expensive, but it does not follow from that fact that an escrow fee of hundreds of thousands of dollars is not burdensome. The Court held *supra* that the arbitration agreement's fee-shifting provision is not unconscionable because it is speculative to assume that the fee-shifting provision would yield a different outcome than Arizona's fee-shifting statute, which provides for an award of fees in the event that Plaintiffs lose. The escrow provision removes all speculation from the equation, as it requires an up-front payment of fees. That is not a cost that Plaintiffs would face in federal court. Litigants are not saddled with the other side's fees unless and until they lose. It makes no difference that the arbitration agreement provides for a refund of escrow to a prevailing party. The Court finds it unconscionable to require a party to post an exorbitantly expensive bond as a prerequisite to even initiate an adjudicative procedure. Such a requirement would have an intolerable chilling effect on the vindication of even the most meritorious claim. The spotlight that Defendants shine on the cost of litigation only highlights this conclusion. Plaintiffs may be hard-pressed to fund their own side of a lawsuit as complex as the instant case. It would be unconscionable to force them to additionally fund their opponent's side by way of a preliminary escrow requirement. The Court therefore rejects Defendants' argument. Plaintiffs have satisfied the first step of the *Rizzio* test.

Plaintiffs also have succeeded in demonstrating that they are unable to bear the costs of arbitration as imposed by the agreement's escrow provision. The four plaintiffs have adduced evidence that their average annual profitability in their three most recent years of operation were $40,791, $69,527, $203,203, and $203,198. (Plaintiffs' Supp. Br. at 13–16.) Plaintiffs have also provided evidence of the various forms of business liabilities that they face. The Court finds it unconscionable to require as a condition of arbitration an up-front

escrow payment that is substantially more expensive than the business profit that the initiating party can expect to reap in an entire year. In reaching this conclusion, the Court is cognizant of the heightened unfairness inherent in the imposition of an advance payment, as opposed to a payment levied at the end of litigation after the initiating party's claims were shown to be meritless.

Defendants argue that Plaintiffs have failed to demonstrate an inability to pay because it "defies common sense" to ground a determination of financial hardship in data of a business's profitability. (Defendants' Supp. Br. at 4.) The Court disagrees. First, Defendants do not suggest an alternative means of examining a business's capacity to afford arbitration expenses. Second, the Court's use of a three-year average allays some of Defendants' concern that a profitability-based analysis would be too volatile from one year to the next. Third, the Court rejects Defendants' core premise that financial unconscionability should not depend on "market conditions." If in one year a poverty-stricken individual succeeds in demonstrating that the expense of arbitrating a claim is unconscionable on grounds of cost, and in the next year that same individual wins the Powerball jackpot, it is eminently sensible that he not be permitted to invalidate future arbitration agreements on grounds of financial inability, as his financial status has materially changed. Similarly, the Court finds that it is appropriate to consider a business's profitability or lack thereof in assessing that business's ability to afford the costs of arbitration.

Defendants also impugn Plaintiffs' professed inability to pay by speculating that such inability is inconsistent with Plaintiffs' purported "retention of 12 lawyers from four firms just to file a complaint and brief objections to arbitration." (Defendants' Supp. Br. at 4.) That assertion is at odds with Defendants' implication on the very next page of their brief that Plaintiffs' counsel has taken this case on a contingency basis and could therefore advance the cost of escrow on Plaintiffs' behalf. This argument fails. It is one thing to expect attorneys who work on a contingency basis to invest their temporal resources in pursuit of an uncertain outcome, but it is another thing altogether to suggest that such

counsel advance hundreds of thousands of dollars merely to initiate a lawsuit. The only case that Defendants cite in support of this argument is *Harrington*, in which the court contemplated an advance of a hypothetical $1,000 filing fee. That thought experiment is inapposite to the sky-high costs imposed by the escrow provision in the instant case. Finally, Defendants claim that one of the four plaintiff pharmacies, Pucci's, can afford the cost of the escrow provision because it recently arbitrated a different case under the same arbitration agreement. (Defendants' Supp. Br. at 4 (citing *Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, 2024 WL 4349291, at *3 (S.D.N.Y. Sept. 30, 2024).) This argument also fails, as that previous case is dissimilar from the instant case. It involved only contract claims, *see Cloney's*, 2024 WL 4349291, at *3, not antitrust and Medicare claims. Therefore, the cost of the escrow payment was likely far less than it would be here. Notably, Defendants do not tell the Court what the cost of the escrow payment in that case was. The Court finds that Plaintiffs have satisfied the second step of the *Rizzio* test.

At the third and final step of the *Rizzio* test, the court must "consider[] whether the agreement permits a party to waive or reduce arbitration costs because of financial hardship." 251 Ariz. at 417 ¶ 11. Here, the agreement does not so provide. That would normally end the analysis, but Defendants have expressly "disavow[ed] any intent to enforce the escrow provision against the four Plaintiffs as to the claims they allege in this matter." (Defendants' Supp. Br. at 3.) Defendants cite to *Rizzio* for the proposition that their "express waiver should remove any doubts that the escrow provision would impede Plaintiffs' ability to arbitrate." (Defendants' Supp. Br. at 3.) The Court is not persuaded.

Defendants have defended the validity of the escrow provision in their original motion to compel arbitration, their reply brief in support thereof, their second motion to compel arbitration, and their reply brief in support thereof. It was not until their fifth legal memoranda filed in relation to this issue that Defendants saw fit to waive enforcement of the escrow provision. Although the Court does not discount the possibility that the decision to waive the escrow provision could be a belated but nevertheless good-faith recognition of unconscionability, it is also plausible that Defendants are engaging in gamesmanship in

order to avoid the Court's issuing an Order formally holding the escrow provision to be unconscionable. The Court expresses no opinion regarding Defendants' motivation, but the Court does find that a waiver such as the one presented here does not remediate the taint of unconscionability or moot the Court's consideration thereof. An unconscionable contractual provision is still unconscionable if the party resisting it must undertake almost a year of litigation in order to procure the other side's waiver. It is likely for that reason that the Arizona Supreme Court held that the third *Rizzio* step hinges upon "whether *the agreement* permits a party to waive or reduce arbitration costs because of financial hardship," not whether the party demanding arbitration agrees to reduce the costs after a year of intense litigation. *See* 251 Ariz. at 417 ¶ 11 (emphasis added). A party's eventual acquiescence to a fee reduction in the manner contemplated here is so unpredictable as to have no bearing on the unconscionability analysis. Therefore, notwithstanding Defendants' express waiver of the escrow provision, the Court holds the escrow provision to be substantively unconscionable.

### E.    The Confidentiality Provision

Although the language differs from version to version, all versions of the arbitration agreement contain a confidentiality provision. The 2024 agreement states that "[e]xcept as may be required by Law, a party, its employees, agents, consultants, authorized representatives, counsel, or arbitrator(s) shall not disclose the existence, content, or results of any dispute or arbitration" and that "Provider acknowledges and agrees that any breach of this provision would cause Caremark immediate and irreparable injury or loss that cannot be fully remediated by monetary damages." (Doc. 69-3 at 97.) Plaintiffs contend that this clause is unconscionable. The Court notes at the outset that the confidentiality provision is one-sided insofar as Defendants are conclusively presumed to be damaged by a breach thereof but that Plaintiffs are burdened with the obligation of proving actual damages. Defendants do not offer an explanation for this inequity. But irrespective of the unfairness of the confidentiality provision's internal remediation procedure, Plaintiffs

contend that the entire clause is an unconscionable gag order. (*See* Plaintiffs' Supp. Br. at 16.)

As the Court noted in its prior Order, the Ninth Circuit has repeatedly held that similar confidentiality provisions are unconscionable.

> We conclude, however, that if the company succeeds in imposing a gag order, plaintiffs are unable to mitigate the advantages inherent in being a repeat player . . . . Thus, AT&T has placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract.

*Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003); *accord Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1002 (9th Cir. 2010). Defendants assert that *Ting* and its progeny are "inapt" because they involved California law. (Defendants' Supp. Br. at 9–10.) Although it is true that the *Ting* line of cases nominally applied California law, the Ninth Circuit has since clarified that the holding in *Ting* "did not rely on any California law." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1267 (9th Cir. 2017). The anti-confidentiality rule of this Circuit is therefore not a product of California law but is instead a creation of the Ninth Circuit itself. *See id.* In *Poublon*, the Ninth Circuit declined to apply the *Ting* rule because the California judiciary had issued an intervening opinion affirmatively rejecting it. But, because California law does not govern the instant case, California's departure from the federal rule is of no moment. As there exists no Arizona caselaw opining on the validity of the *Ting* rule in this state, the Court chooses to cleave to the precedents of the Ninth Circuit. Courts from this District have already twice decided that the *Ting* anti-confidentiality rule is consistent with Arizona law. *See Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1110 (D. Ariz. 2014) ("Similarly here, the confidentiality provision in the arbitration agreements keep only plaintiffs in the dark regarding prior arbitration decisions and only defendants would benefit from this provision."); *Barnett v. V.T. Motors LLC*, No. CV-21-01195-PHX-SPL, 2021 WL 5759113, at *5 (D. Ariz. Dec. 3, 2021) ("The same is true in this case, and

given the similarly sweeping scope of the confidentiality provisions in this case as in *Longnecker*, the same result follows: the Arbitration Agreement's confidentiality provision is unconscionable."). The Court declines to disturb those holdings.

Defendants' attempt at distinguishing *Ting* also fails. Although *Ting* involved a defendant imposing a confidentiality provision on "seven million" distinct parties, the Court does not find that number meaningfully distinct from the "65,000 pharmacies" that are subject to Defendants' confidentiality provision in the case at bar. (*See* Defendants' Supp. Br. at 1, 9.) Defendants' final argument is that the effect of the confidentiality provision is unimportant because Plaintiffs "do not allege the existence of *any* arbitrations against Caremark raising antitrust claims based on Caremark's indirect-and-direct remuneration fees." (Defendants' Supp. Br. at 9.) This reasoning puts the cart before the horse. Plaintiffs cannot be expected to produce evidence of similar cases, the knowledge of which might be useful in the litigation of the instant case, while suffering under a gag order. The Court therefore holds that the arbitration agreement's confidentiality provision is unconscionable. However, the scope of this unconscionability is limited, as is discussed in more detail below.

## F. The Limitations Provision

The final provision that Plaintiffs attack is the limitations provision, which in 2020 and 2022 required aggrieved parties to initiate arbitration "within six (6) months from the date on which the facts giving rise to the dispute first arose" but which Defendants amended in 2023 to provide "two (2) years from the date on which the facts giving rise to the dispute first arose" within which to initiate arbitration. (*See* Doc. 43-6 at 92; Doc. 69-2 at 5.) In Arizona, it is well-established that parties to a contract generally may adopt terms providing a shorter limitations period than would obtain under statute. *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 115 (Ct. App. 1996) ("Thus, parties are at liberty by contract to shorten the limitations period provided by statute."); *Angus Med.*, 173 Ariz. at 167 (Ct. App. 1992) ("If it is not unconscionable to waive or disclaim an entire category of remedies, *a fortiori* it is not unconscionable to shorten the time within which a party

must exercise those remedies."). Although the Arizona judiciary has narrowed the extent to which a contracting entity may alter limitations periods when doing so would defeat the basic intent of the contract, particularly in the context of insurance contracts, *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 146 (1982), the general rule remains that "parties may contract with regard to shortening the statute [of limitations]," *see id.* at 143 n.5. Plaintiffs cite two cases from the Ninth Circuit purportedly demonstrating the unconscionability of limitations provisions. (Plaintiffs' Supp. Br. at 17.) The first, *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952–54 (9th Cir. 2008), applies the law of California and New York and is thus inapposite. The second, *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003), does not disapprove of limitations provisions generally but instead creates a narrow carveout in order to protect a plaintiff's access to the continuing violation doctrine. Plaintiffs do not assert that the continuing violation doctrine is relevant to the instant case. The Court therefore holds that the arbitration agreement's limitations provision is not unconscionable.

### G.    Severability

The Court has found three of the arbitration agreement's provisions to be unconscionable: (1) the unilateral remedy for breach provisions, (2) the escrow provision, and (3) the confidentiality provision. All relevant versions of the arbitration agreement contain a severability clause stating that "[i]n the event that any provision or term set forth in the Provider Agreement is determined invalid or unenforceable, such invalidity and unenforceability will not affect the validity or enforceability of any other provision or term set forth in the Provider Agreement." (*See, e.g.*, Doc. 43-4 at 44; Doc. 69-3 at 95.) Defendants argue that the Court ought to give effect to this clause by severing the unconscionable portions of the arbitration agreement and enforcing the remainder. (Defendants' Supp. Br. at 18–20.) In contrast, Plaintiffs contend that the unconscionable provisions of the arbitration agreement so predominate over the remainder thereof that the entire agreement must be stricken. (Plaintiffs' Supp. Br. at 5–6.) The Court agrees with Defendants.

"In Arizona, even if one part of a severable contract is void, the court may enforce the remainder of the contract." *Mousa v. Saba*, 222 Ariz. 581, 587 ¶ 25 (Ct. App. 2009); *see also Hamblen v. Hatch*, 242 Ariz. 483, 487 ¶ 15 (2017) (adopting the doctrine of "separability" in the context of Arizona's Uniform Arbitration Act). Plaintiffs cite several cases from the Ninth Circuit applying California law and holding that severance is inappropriate when the unconscionable terms taint the central purpose of the arbitration agreement with illegality. (Plaintiffs' Supp. Br. at 5–6 (citing *Heckman*, 114 F.4th at 688–89, and *Ronderos*, 114 F.4th at 1099–1104).) Although the cases cited by Plaintiff do not involve Arizona law, their holdings are still consistent with Arizona law, as severance is a matter of judicial discretion. *See Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 533 (1986) ("If it is clear from its terms that a contract was intended to be severable, the court *can* enforce the lawful part and ignore the unlawful part." (emphasis added)). Here, there exists good reason to sever the objectionable portions of the arbitration agreement and enforce the residue.

First, as already noted, the contract expressly provides for severance. Second, none of the unconscionable provisions taint the central purpose of the arbitration agreement. The escrow provision constitutes a barrier to entry. It is an impediment to arbitration, and its unconscionability derives from the fact that it frustrates the central purpose of the arbitration agreement, namely the arbitration of claims. Therefore, severing the escrow provision will serve the overall purpose of the agreement, not obstruct it. Likewise, the unilateral remedy for breach is an obstacle to arbitration. For instance, it permits Defendants, and only Defendants, to abort the arbitration process or void a final award resulting therefrom. Severing this unconscionable provision will advance the central purpose of the agreement. The confidentiality provision presents a trickier issue. In both of this District's precedents discussed *supra*, the court severed a confidentiality provision and enforced the remainder of the arbitration agreement. *See Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1111 (D. Ariz. 2014) (holding that it was "appropriate to sever the confidentiality . . . clause[] and enforce the remainder of the agreement."); *Barnett v. V.T.*

*Motors LLC*, No. CV-21-01195-PHX-SPL, 2021 WL 5759113, at \*5 (D. Ariz. Dec. 3, 2021) ("As in *Longnecker*, where the arbitration provision also contained a severability clause, severing the confidentiality clause and otherwise enforcing the Agreement is appropriate and consistent with the FAA and Arizona public policy favoring arbitration."). Unfortunately, neither *Longnecker* nor *Barnett* explained what it means to sever a confidentiality clause.

The confidentiality provision at issue here prevents the parties from disclosing information relating to arbitration. That prohibition, however, is not the source of the clause's unconscionability. Rather, it is the existence of similar provisions in the myriad contracts between Defendants and similarly situated third-party pharmacies that harms Plaintiffs. In other words, it is not the inability to speak that disadvantages Plaintiffs in their quest to vindicate their claims; rather, it is the inability to hear the speech of others. Therefore, severing the confidentiality provision of the instant arbitration agreement will do nothing to address the information asymmetry that renders the provision unconscionable in the first place. Although neither party briefed this issue, the Court identifies a particular discovery limitation as part and parcel with the unconscionability of the confidentiality provision. In 2022, Defendants inserted a clause into the arbitration agreement stating that:

> Discovery shall be limited to the Provider initiating the dispute and no other Provider. Provider expressly agrees not to seek discovery concerning other Providers, disputes or arbitration matters not involving the Provider at issue. Provider agrees that an Arbitrator(s) shall have no authority hereunder to order discovery related to other Providers, disputes or arbitration matters not involving the Provider at issue. Any attempt by Provider to seek discovery on other Providers, disputes or arbitration matters shall be deemed a violation of this provision, as well as Section 14, and subject Provider to the penalties outlined in those provisions.

(Doc. 69-1 at 97.)[7]

---

[7] The express one-sidedness of this provision bolsters the Court's conclusion that the confidentiality provision is asymmetric and unconscionable, as this discovery limitation and the penalties for a breach thereof apply only to Plaintiffs.

The Court holds this provision to be unenforceable. Plaintiffs may discover information pertaining to other arbitral adjudications, provided that Plaintiffs are able to make the threshold showing that such information is "direct[ly], substantial[ly], and demonstrabl[y] need[ed], and [that] such documents and information can be located and produced at a cost that is reasonable in the context of all surrounding facts and circumstances." (*See, e.g.*, Doc. 69-1 at 97.) To be clear, the Court is not invalidating all of the arbitration agreement's discovery provisions. Such provisions remain generally enforceable. Rather, the Court is declaring one such provision unenforceable only insofar as is necessary to effectuate its antecedent holding regarding the unconscionable effect of the confidentiality provision. Plaintiffs' use of any discovered information shall be limited to the vindication of their claims. Plaintiffs are not permitted to publicize or disseminate such information, as that action would frustrate the intent of the parties in a manner wholly unrelated to the objectionable effect of the arbitrations agreement's confidentiality provision. The Court leaves to the arbitrators the precise contours of any necessary protective orders or seals. This holding, which involves the targeted invalidation of an isolated contractual provision, is not the kind of "blue pencil" remedy that the Arizona Supreme Court has rejected, which the high court has likened to the "rewrit[ing] and creat[ion] [of] a restrictive covenant significantly different from that created by the parties." *See Valley Med. Specialists v. Farber*, 194 Ariz. 363, 372 ¶¶ 30–32 (1999).

## III.    Conclusion

The Court holds that three provisions of the parties' arbitration agreement are substantively unconscionable. However, these provisions are severable. The remainder of the arbitration agreement is enforceable. The parties shall therefore proceed to arbitration.

The Supreme Court recently overturned a long line of Ninth Circuit cases and held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). That holding is vitally important to the

parties' appellate rights, as "[a]n order compelling arbitration and staying the action isn't immediately appealable, but an order compelling arbitration and dismissing the action is." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); *see also* 9 U.S.C. § 16(b)(1) (providing that no appeal may be taken from an order granting a stay of an arbitrable action). Here, Defendants have not requested a stay and instead have affirmatively requested a dismissal. (*See* Doc. 42 at 1.) Therefore, the Court will dismiss Plaintiffs' claims.

**IT IS THEREFORE ORDERED** denying Defendants' Motion to Strike (Doc. 86).

**IT IS FURTHER ORDERED** granting both of Defendants' Motions to Compel Arbitration (Doc. 42; Doc. 68). The parties shall submit this matter to arbitration pursuant to the terms of their arbitration agreements, except that the unenforceable provisions of the agreements identified herein shall not be enforced.

**IT IS FURTHER ORDERED** dismissing this case without prejudice and directing the Clerk of Court to terminate this matter.

Dated this 12th day of February, 2025.

Honorable John J. Tuchi
United States District Judge